OPINION
{¶ 1} Appellant, Andrew W. Thompson, was convicted by a jury of identity fraud for his part in his wife's scheme by which his wife used the stolen identity of another to obtain a mortgage for a new home. For the reasons that follow, we affirm.
 {¶ 2} Substantive and Procedural History
 {¶ 3} In 2004, Mr. Thompson was married to Charlotte Thompson. During that time, Charlotte Thompson operated a school. The victim in this case, Nadena Carter, *Page 2 
worked as a teacher's aide at Charlotte Thompson's school for one school year. In addition, Nadena Carter knew Mr. Thompson, because he worked at the school for about one month as a music teacher.
 {¶ 4} Neroy Carter was a church pastor, and, in the summer following the school-year that Nadena Carter worked for Charlotte Thompson, Neroy Carter's church purchased a new building. Neroy Carter permitted Charlotte Thompson to use some of the space in the new church building to operate her school.
 {¶ 5} The Carters' daughter was friends with one of the Thompsons' daughters. Several times, the Carters' daughter spent the night at the Thompsons' residence near Cleveland, and the daughter also attended Mrs. Thompson's school. Neroy Carter, the victim's husband, testified that he met Mr. Thompson on one occasion when he picked up his daughter from the Thompsons' home near Cleveland.
 {¶ 6} Nadena Carter assisted Charlotte Thompson physically move her school from its prior location to the new church building. Charlotte Thompson was ultimately asked to leave the building due to her failure to pay rent.
 {¶ 7} During the time of the move into the new church, Mrs. Carter thought that she had lost her purse and only surmised that it would eventually be found. Later, her sister informed her that someone driving a U-haul truck had used her credit card at a Chico's restaurant in Ashtabula. It was later discovered that Charlotte Thompson had signed her own name on a credit card transaction on Mrs. Carter's account.
 {¶ 8} In February 2006, Nadena Carter received a telephone call from Waterfield Mortgage Company regarding a home in Painesville, Ohio. Waterfield questioned Nadena Carter about her failure to make payments on the home. Since the *Page 3 
Carters did not own a house in Painesville, they contacted the Lake County Sheriff's Office.
 {¶ 9} Deputy Jeffrey Belle of the Lake County Sheriff's Office met with Neroy Carter regarding his concern about identity theft. Thereafter, Deputy Belle conducted an investigation. Deputy Belle and Lieutenant Todd Menmuir went to the residence in Painesville and knocked on the door. A woman indentifying herself as Charlotte Thompson answered the door. The officers confirmed the woman's identity as Charlotte Thompson by asking for photo identification. Charlotte Thompson explained that the house was owned by Nadena Carter and that Nadena Carter was not at the residence at that time.
 {¶ 10} A few days later, Deputy Belle called the Painesville residence from the sheriff's office. The woman who answered the phone identified herself as Nadena Carter. However, Deputy Belle recognized her voice as Charlotte Thompson. While he was on the phone with the woman, Deputy Belle sent Lieutenant Menmuir to the residence. After concluding the call, Deputy Belle met Lieutenant Menmuir outside of the residence, and they entered the home. A woman wearing a wig identified herself as Nadena Carter. However, Deputy Belle recognized the woman as Charlotte Thompson. The officers asked the woman if she would come to the station to give a statement. At that time, the woman asked to call her attorney, which the officers permitted her to do. The woman left a voicemail message for her attorney, and Deputy Belle overheard her identify herself as Charlotte Thompson.
 {¶ 11} Further investigation revealed that Charlotte Thompson, using the name Nadena Carter, contacted James Wetzel of Re/Max Real Estate Experts regarding the *Page 4 
listing of the Painesville home. Charlotte Thompson liked the home and signed, again using the name Nadena Carter, a purchase agreement to buy the home for $221,000. Charlotte Thompson met with Dan Robinson of Waterfield Mortgage, for the purposes of obtaining financing for the Painesville home. Charlotte Thompson, using the identity of Nadena Carter, was approved for financing for a thirty-year loan in the amount of $217,909. Todd Gyure of Gyure's Document Service performed the title work and the escrow services for the transaction. He met with a woman, who identified herself as Nadena Carter, and assisted in the closing of the real estate transaction for the Painesville home. At trial, he identified a portion of state's exhibit one as a truth in lending disclosure statement. This document states that the amount financed was $214,612.54.
 {¶ 12} Throughout the process of purchasing the Painesville residence, Charlotte Thompson used fictitious documents bearing the name of Nadena Carter, including a driver's license and W-2 forms, as well as Carter's social security number. In addition, Charlotte Thompson used a fictitious power of attorney, purportedly executed by Neroy Carter, giving Nadena Carter power to act as his attorney-in-fact while he was on a mission trip.[1]
 {¶ 13} Eventually, Charlotte Thompson purchased the Painesville home, and she and Mr. Thompson moved into the home together.
 {¶ 14} Mr. Thompson gave a statement to Deputy Belle in which he stated that he did not know Nadena Carter, that he asked his wife about Nadena Carter, and that *Page 5 
she told him not to worry about it. Further, he stated that he wondered how he and his wife could obtain financing for the Painesville home since they had filed for bankruptcy several times. Finally, Mr. Thompson said that he paid certain bills that were in Nadena Carter's name, most specifically the mortgage and utilities for the Painesville home. On some of the checks Mr. Thompson wrote to pay the mortgage, he wrote a reference to Nadena Carter's name in the memo line.
 {¶ 15} Mr. Thompson was indicted on one count of identity fraud, in violation of R.C. 2913.49(C), a second-degree felony. A not guilty plea to this charge was entered.
 {¶ 16} The matter proceeded to a jury trial. At the close of the state's case-in-chief, Mr. Thompson moved for acquittal pursuant to Crim. R. 29. The trial court overruled this motion, and Mr. Thompson did not present any evidence. The jury found Mr. Thompson not guilty of identity fraud as charged in the indictment. However, the jury found Mr. Thompson guilty of a lesser-included offense of identity fraud, in violation of R.C. 2913.49(C), a fourth-degree felony.
 {¶ 17} The trial court sentenced Mr. Thompson to one year of community control. The imposition of community control included several conditions, including that Mr. Thompson serve forty-five days in the Lake County Jail and perform one hundred hours of community service.
 {¶ 18} Mr. Thompson appealed the trial court's judgment to this court. On appeal, Mr. Thompson moved this court to stay the execution of his sentence and the state opposed the motion. This court granted Mr. Thompson's motion to stay in relation to his jail sentence only. However, this court conditioned the stay upon Mr. Thompson's posting of a supersedeas bond in the amount of $5,000 with the Lake County Clerk of *Page 6 
Courts. A review of the docket in this matter indicates that Mr. Thompson never posted the required bond, and thus, the stay never went into effect.
 {¶ 19} Mr. Thompson raises the following assignment of error:
 {¶ 20} "Mr. Thompson's conviction for identity fraud is against the sufficiency and/or manifest weight of the evidence presented at trial."
 {¶ 21} Sufficiency of Evidence
 {¶ 22} A trial court shall grant a motion for acquittal when there is insufficient evidence to sustain a conviction. Crim. R. 29(A). When determining whether there is sufficient evidence presented to sustain a conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v. Virginia
(1979), 443 U.S. 307.
 {¶ 23} Mr. Thompson was convicted of identity fraud, in violation of R.C. 2913.49, which provides, in part:
 {¶ 24} "(A) As used in this section, `personal identifying information' includes, but is not limited to, the following: the name, address, telephone number, driver's license, driver's license number, commercial driver's license, commercial driver's license number, state identification card, state identification card number, social security card, social security number, birth certificate, place of employment, employee identification number, mother's maiden name, demand deposit account number, savings account number, money market account number, mutual fund account number, other financial *Page 7 
account number, personal identification number, password, or credit card number of a living or dead individual.
 {¶ 25} "(B) No person, without the express or implied consent of the other person, shall use, obtain, or possess any personal identifying information of another person with intent to do either of the following:
 {¶ 26} "(1) Hold the person out to be the other person;
 {¶ 27} "(2) Represent the other person's personal identifying information as the person's own personal identifying information.
 {¶ 28} "(C) No person shall create, obtain, possess, or use the personal identifying information of any person with the intent to aid or abet another person in violating division (B) of this section."
 {¶ 29} Mr. Thompson was convicted of violating section (C) of R.C. 2913.49 by aiding or abetting Charlotte Thompson violate section (B).
 {¶ 30} At the time Charlotte Thompson committed the act of purchasing the home using Nadena Carter's name, Mr. Thompson was married to her. After the home was purchased, Mr. Thompson resided in the home with his wife. Mr. Thompson admitted that he was unsure how they obtained financing for the home, since they had filed for bankruptcy multiple times. He learned that several bills, including the mortgage, were in Nadena Carter's name. Specifically, in his statement to the police, Mr. Thompson stated, "during the time at [the Painesville home] I paid the mortgage, the cable, computer, newspaper, automobile insurance, Charlotte paid gas, water, electric, as far as I know there were noother bills in Mrs. Carter's name." (Emphasis added.) *Page 8 
 {¶ 31} Although he stated that he did not know a Nadena Carter, he paid the mortgage bill in her name. The state introduced copies of checks written on Mr. Thompson's personal checking account to Waterfield Mortgage Company with "Nadena Carter" and "C. Carter" written in the memo line.
 {¶ 32} Further, Susan Dodge of the Lake County Department of Utilities testified regarding a worksheet from her office. The worksheet indicates that Mr. Thompson called the water department regarding the water at the Painesville residence, which was in Nadena Carter's name. Further, Mr. Thompson's cell phone number is written next to his name.
 {¶ 33} The evidence presented by the state, when taken together and viewed in a light most favorable to the state, was sufficient for a trier-of-fact to find beyond a reasonable doubt that Mr. Thompson used Nadena Carter's name with the intent to aid or abet Charlotte Thompson in her use of Nadena Carter's name and other personal identifying information to represent herself as Nadena Carter.
 {¶ 34} The Value of the Loss
 {¶ 35} Mr. Thompson also argues that the state did not provide sufficient evidence of the value of the loss. We disagree. R.C. 2913.49(I)(2) provides, in pertinent part:
 {¶ 36} "(2) Except as otherwise provided in this division or division (I)(3) of this section, identity fraud is a felony of the fifth degree. * * * If the value of the credit, property, services, debt, or other legal obligation involved in the violation or course of conduct is one hundred thousand dollars or more, except as otherwise provided in division (I)(3) of this section, identity fraud is a felony of the second degree." *Page 9 
 {¶ 37} Mr. Thompson argues the only evidence presented regarding the value of the debt was the sale price of the Painesville home. James Wetzel testified that the sale price was $221,000. However, contrary to Mr. Thompson's assertion, this was not the only evidence presented.
 {¶ 38} Deputy Belle testified that Charlotte Thompson provided a package of documents regarding the purchase of the Painesville home. This packet was admitted as the state's exhibit nineteen. In the package is a document entitled "truth-in-lending disclosure statement." This document was also identified by Todd Gyure. This document states that the amount of money borrowed was $214,961.82.
 {¶ 39} Further, Daniel Robinson testified regarding the loan application in this matter. He testified that the document, which was admitted as part of the state's exhibit one, indicated the loan amount was $217,909.
 {¶ 40} Finally, a copy of the promissory note was included in state's exhibit one, and this document states the principal sum borrowed was $217,909.
 {¶ 41} The state presented evidence that the value of the debt incurred in Nadena Carter's name was in excess of $100,000.
 {¶ 42} There was sufficient evidence presented pertaining to all the elements of identity fraud. Thus, the trial court did not err in overruling Mr. Thompson's Crim. R. 29 motion for acquittal.
 {¶ 43} Manifest Weight
 {¶ 44} In determining whether a verdict is against the manifest weight of the evidence, the Supreme Court of Ohio has adopted the following language as a guide: *Page 10 
 {¶ 45} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" State v. Thompkins (1997), 78 Ohio St.3d 380, 387. (Citations omitted.)
 {¶ 46} Mr. Thompson, relying on his police statement, presented a theory to the jury that he was entirely innocent and was oblivious to the actions of his wife, Charlotte Thompson. However, some of his statements were contradicted by other evidence.
 {¶ 47} In his statement to the police, Mr. Thompson states that he did not know Nadena Carter. However, this statement was contradicted by Nadena Carter, who testified that she worked with Mr. Thompson for one month at Charlotte Thompson's school. Further, Neroy Carter testified that the Carters' daughter had spent the night at the Thompsons' home on several occasions.
 {¶ 48} In his appellate brief, Mr. Thompson notes that Deputy Belle testified that Charlotte Thompson told him that she did not tell Mr. Thompson who financed the house. However, in his statement, Mr. Thompson states that Charlotte told him "she had financing and not to worry." Later in his statement, Mr. Thompson states he learned that some of the bills were in Nadena Carter's name. However, there was unrebutted evidence that Mr. Thompson established a utilities account for the residence. *Page 11 
 {¶ 49} Regarding the value of the debt, there was no evidence presented that the value of the debt was less than $100,000. All of the state's evidence indicated that the value of the credit was in excess of $200,000.
 {¶ 50} Based on the record before us, we conclude that the jury did not lose its way or create a manifest miscarriage of justice by finding Mr. Thompson guilty of the fourth-degree felony version of identity fraud.
 {¶ 51} Mr. Thompson's assignment of error is without merit.
 {¶ 52} The judgment of the Lake County Court of Common Pleas is affirmed.
CYNTHIA WESTCOTT RICE, J., concurs,
COLLEEN MARY O'TOOLE, J., concurs in judgment only.
[1] The evidence does not suggest that Mr. Thompson assisted Charlotte Thompson in the creation of the power of attorney by representing himself as Neroy Carter. Instead, the deputies believed that the entire document was fraudulently created by Charlotte Thompson. *Page 1